Seth D. Rothman
David B. Shanies
Fara Tabatabai
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
seth.rothman@hugheshubbard.com

**JURY TRIAL DEMANDED**

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEREMY SUNDERLAND, <br><br>        Plaintiff, <br><br> — against — <br><br> SUFFOLK COUNTY, NEW YORK; VINCENT F. DeMARCO, in his official capacity; CHARLES EWALD, in his official capacity; VINCENT T. GERACI; DENNIS RUSSO; and THOMAS TROIANO, <br><br>        Defendants. | 13-CV-4838 (JFB) (AKT) <br><br> **AMENDED COMPLAINT** |

   As and for Plaintiff's Amended Complaint against Defendants Suffolk County, New York; Vincent F. DeMarco; Charles Ewald; Vincent T. Geraci; Dennis Russo; and Thomas Troiano, Plaintiff Jeremy Sunderland alleges as follows:

### NATURE OF THE ACTION

   1.  Plaintiff brings this civil rights action under 42 U.S.C. § 1983.  Plaintiff is a transgender individual with gender dysphoria, who was receiving medically-prescribed hormone therapy at the time Plaintiff entered the Suffolk County Correctional Facility ("SCCF").  Defendants violated Plaintiff's rights under the Eighth and Fourteenth Amendments to the

United States Constitution by denying Plaintiff hormone therapy and acting in a manner that was deliberately indifferent to Plaintiff's serious medical needs.

2.      Plaintiff sues Suffolk County, the Suffolk County Sheriff and the SCCF Warden for failing to ensure that there was adequate medical care at SCCF through the implementation of appropriate policies and procedures, and the training and supervision of SCCF medical staff. Plaintiff also sues three of the physicians at SCCF, each of whom was responsible for Plaintiff's medical care while Plaintiff was at SCCF.

## JURISDICTION AND VENUE

3.      This action arises under 42 U.S.C. § 1983.

4.      The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a), which confer original jurisdiction to federal district courts in suits seeking to redress the deprivation of rights secured by the United States Constitution.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## JURY DEMAND

6.      Plaintiff demands a trial by jury in this action.

## PARTIES

7.      Plaintiff is a citizen of the State of New York who is currently housed at Mohawk Correctional Facility in Rome, New York.  From September 2012 until January 2014, Plaintiff was incarcerated at SCCF.

8.      At all times relevant to this action, Defendant Suffolk County, New York managed and operated SCCF.   The County was among those responsible for ensuring that

adequate medical care was provided to the inmates at SCCF through, among other things, the implementation of policies and procedures and the training and supervision of SCCF staff.

9. At all times relevant to this action, Defendant Vincent F. DeMarco was the Suffolk County Sheriff. The Suffolk County Sheriff's Office operates SCCF, and Defendant DeMarco was responsible for the management of SCCF. Defendant DeMarco was among those responsible for ensuring that adequate medical care was provided to the inmates at SCCF through, among other things, the implementation of policies and procedures and the training and supervision of SCCF staff. Defendant DeMarco is sued in his official capacity only.

10. At all times relevant to this action, Defendant Charles Ewald was the Warden of SCCF and was responsible for the management of SCCF. Defendant Ewald was also among those responsible for ensuring that adequate medical care was provided to the inmates at SCCF through, among other things, the implementation of policies and procedures and the training and supervision of SCCF staff. Defendant Ewald is sued in his official capacity only.

11. At all times relevant to this action, Defendant Vincent T. Geraci was a physician with the Suffolk County Department of Health Services and the Medical Director at SCCF. Dr. Geraci exercised decision-making authority regarding the care and treatment of Plaintiff and was among those responsible for denying Plaintiff medically necessary care.

12. At all times relevant to this action, Defendant Dennis Russo was a physician with the Suffolk County Department of Health Services and assigned to SCCF. Dr. Russo was one of the physicians responsible for Plaintiff's medical care and was among those responsible for denying Plaintiff medically necessary care.

13. At all times relevant to this action, Defendant Thomas Troiano was a physician with the Suffolk County Department of Health Services and a psychiatrist assigned to SCCF

through the Suffolk County Mental Health Clinic. Dr. Troiano was one of the physicians responsible for Plaintiff's medical care and was among those responsible for denying Plaintiff medically necessary care.

## FACTUAL ALLEGATIONS

**Gender Dysphoria**

14. Gender dysphoria is a medical condition in which a person suffers distress because of a mismatch between their biological gender and their gender identity. The distress that characterizes gender dysphoria often arises as a direct result of this incongruence, but it may also arise from the unavailability of desired physical interventions, such as hormone therapy or gender reassignment surgery.

15. Gender dysphoria is recognized as a serious medical condition by numerous health authorities, including the American Medical Association, the World Health Organization, and the American Psychiatric Association. It is included in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V").

16. DSM-V describes gender dysphoria as "[a] marked incongruence between one's experienced/expressed gender and assigned gender, of at least 6 months' duration," resulting in clinically significant impairment or distress, as manifested by two or more of the following:

> 1) A marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristics (or in young adolescents, the anticipated secondary sex characteristics);
>
> 2) A strong desire to be rid of one's primary and/or secondary sex characteristics because of a marked incongruence with one's experienced/expressed gender (or in young adolescents, a desire to prevent the development of the anticipated secondary sex characteristics);
>
> 3) A strong desire for the primary and/or secondary sex characteristics of the other gender;

4

    4)    A strong desire to be of the other gender (or some alternative gender different from one's assigned gender);

    5)    A strong desire to be treated as the other gender (or some alternative gender different from one's assigned gender);

    6)    A strong conviction that one has the typical feelings and reactions of the other gender (or some alternative gender different from one's assigned gender).

17. Gender dysphoria requires medical treatment from qualified health care professionals. Left untreated, gender dysphoria is known to lead to significant medical problems, including suicidality and the impulse to engage in self-castration and self-harm. Individuals with untreated gender dysphoria also experience clinically significant depression, anxiety, and mental impairment.

18. The medically appropriate treatment for gender dysphoria depends on the individual and includes: (a) outwardly conforming one's gender expression and gender role to match one's internal sense of gender identity, including changing pronoun usage, grooming, and dress from the gender assigned at birth to the other gender; (b) receiving hormone therapy to promote the development of secondary sex characteristics that affirm one's sense of gender identity, such as, in the case of a transgender person identifying as female, the taking of estrogen pills and testosterone blockers; and (c) obtaining gender reassignment surgery.

19. While psychotherapy may be used in conjunction with the medically accepted treatments described above, psychotherapy is not a substitute for these treatments. Attempting to treat gender dysphoria with psychotherapy (either alone or in combination with psychotropic drugs) or attempting "to cure" a person of gender dysphoria by forcing them to disregard their innate sense of gender identity and live as their assigned gender is a gross departure from

accepted medical practice and puts the gender dysphoric individual at substantial risk of serious depression, anxiety, suicidality, and self-harm.

20. Individuals who receive hormone therapy for their gender dysphoria typically begin to experience physical changes within a few weeks. The overall process of transitioning from one gender to another may take years. Standards of care generally accepted in the medical community warn that discontinuing hormone therapy in individuals who have been receiving it is dangerous and can have catastrophic physical and psychological effects.

21. The United States Department of Justice has issued public statements regarding the healthcare of transgender inmates. In its statements, the Department of Justice has made clear that the Eighth Amendment mandates individualized assessment and care for gender dysphoria in transgender inmates. According to the Department of Justice, denying hormone therapy to transgender inmates when it is medically indicated is unconstitutional.

**Plaintiff's Gender Dysphoria and Treatment History**

22. Plaintiff, who is now 29 years old, was born a male. At around 15 years of age, Plaintiff began to identify as a female. Plaintiff began to wear female clothing, adopted a female name, and began, in other respects, to act as a female. Plaintiff has continued to identify as a female since that time.

23. In early 2010, Plaintiff began to suffer severe emotional and mental distress relating to Plaintiff's gender identity. Plaintiff — a U.S. army veteran who served a tour of duty in Iraq — sought medical treatment at a Veterans Administration medical facility. After extensive testing and evaluation, Plaintiff was diagnosed with gender dysphoria.

24. Following Plaintiff's diagnosis, Plaintiff received treatment from the medical professionals at the Veterans Administration medical facility and the Callen Lorde Community

Health Center. Plaintiff's treating physicians determined that Plaintiff should receive hormone therapy and prescribed certain medications, including estrogen derivatives and hormone antagonists (i.e., targeted "blockers" of hormones such as testosterone and aldosterone).

25. Plaintiff received hormone therapy from 2010 through September 2012, when Plaintiff entered SCCF. During the two years prior to Plaintiff's incarceration, Plaintiff received hormone therapy continuously, other than a brief period when Plaintiff's treating physicians suspended Plaintiff's hormone therapy due to an unrelated medical issue.

**SCCF Failed To Provide Plaintiff With Adequate Treatment And Care**

26. Upon arrival at SCCF on September 8, 2012, Plaintiff informed SCCF's medical staff that Plaintiff had been diagnosed with gender dysphoria and was currently receiving hormone therapy as a treatment for this condition. Plaintiff requested that SCCF allow Plaintiff to continue receiving Plaintiff's hormone therapy.

27. Neither Suffolk County nor any of the physicians who were responsible for Plaintiff's care at SCCF — including Defendants Vincent Geraci, Dennis Russo, and Thomas Troiano — ever provided or arranged for Plaintiff to receive any treatment, including hormone therapy, for Plaintiff's gender dysphoria during the 16 months that Plaintiff spent at SCCF.

28. To the contrary, the Defendants acted in a manner that was deliberately indifferent to Plaintiff's serious medical needs. The SCCF medical staff — including the Defendant physicians — were dismissive of Plaintiff's condition and did not make any real effort to continue Plaintiff's hormone therapy. Indeed, within months of Plaintiff's arrival at SCCF, the SCCF medical staff — including the Defendant physicians — affirmatively decided not to provide hormone therapy to Plaintiff, deeming it a "non-essential" treatment.

67013255_5

29. From the outset, Defendants refused to take Plaintiff's medical condition and need for continued hormone therapy seriously. Defendants did not continue Plaintiff's hormone therapy when Plaintiff first arrived at SCCF, and it was not until six weeks after Plaintiff's arrival at SCCF that any of the SCCF medical staff even reviewed Plaintiff's medical records.

30. On October 23, 2012, Defendant Russo, a physician at SCCF, reviewed Plaintiff's medical records and noted that Plaintiff had been receiving "hormonal transgender medication." Dr. Russo listed the different types of hormone medication that Plaintiff had been receiving prior to Plaintiff's incarceration at SCCF. Although Dr. Russo saw Plaintiff in the sick call unit, Dr. Russo never renewed Plaintiff's prescriptions or took any steps to see that Plaintiff received treatment for gender dysphoria.

31. Plaintiff repeatedly asked the Defendant physicians to allow Plaintiff's hormone therapy, but was ignored or dismissed. On occasion, Plaintiff was told that Plaintiff would have to be evaluated before Plaintiff could receive hormone therapy, but Defendants did not follow through to make that happen. Plaintiff became increasingly distressed and frustrated by Defendants' failure to treat Plaintiff or resume Plaintiff's hormone therapy. Plaintiff experienced depression, anxiety, and emotional distress, all of which are common symptoms experienced by individuals with gender dysphoria when their hormone therapy is discontinued.

32. Plaintiff sought psychiatric help for Plaintiff's depression and increasing despondency. In November 2012, Plaintiff informed Defendant Thomas Troiano, a psychiatrist at SCCF, that Plaintiff was depressed due to the lack of treatment for Plaintiff's gender dysphoria. Dr. Troiano informed Defendant Vincent Geraci, SCCF's medical director, of Plaintiff's situation, but Dr. Geraci did nothing to look into Plaintiff's treatment, to ensure that Plaintiff received proper treatment, or to resume Plaintiff's hormone therapy.

33. On or before January 2013, it was affirmatively decided that the SCCF medical staff was not going to provide Plaintiff with Plaintiff's medically-necessary hormone therapy. On January 10, 2013, Dr. Troiano acknowledged this decision in a written note: "[R]elative to [Plaintiff] receiving sex change hormones there will be no movement on that front and this won't happen while he is incarcerated here at Suffolk County."

34. The Defendant physicians – Drs. Geraci, Russo and Troiano ― knew that Plaintiff had been diagnosed with gender dysphoria, but they refused to provide Plaintiff with adequate medical treatment for this condition while Plaintiff was at SCCF. As a result, Plaintiff's mental health deteriorated. Plaintiff continued to suffer from depression, mental anguish, and emotional distress. Plaintiff also suffered traumatic physical changes as a result of being cut off from hormone therapy. Plaintiff experienced physical pain and distress as a result.

35. By April 2013, Plaintiff still had received no treatment and by then was at an emotional breaking point. Plaintiff had consistently informed SCCF medical staff that Plaintiff suffered from gender dysphoria and repeatedly requested treatment. The medical staff at SCCF, including the Defendant physicians, was dismissive and indifferent to Plaintiff's need for medical attention and had even informed Plaintiff that Plaintiff would not receive hormone therapy while incarcerated at SCCF. After having not received medical attention for seven months despite repeated requests, Plaintiff filed a medical grievance against SCCF on April 16, 2013.

36. After receiving the grievance, the SCCF medical staff decided that it needed to respond in some way, but even this response was half-hearted an inadequate. Records reflect that the medical staff scheduled an evaluation for Plaintiff with an endocrinologist at Stony

9

Brook, but despite the fact that Plaintiff was suffering and had already been without treatment for eight months, the appointment was made for four months later, in August.

37. The Stony Brook appointment never took place and was never rescheduled. Having made a desultory effort to schedule an appointment for Plaintiff – a year after Plaintiff's arrival at SCCF – the SCCF medical staff, including the Defendant physicians, never followed up or ensured that another appointment was scheduled. In fact, Plaintiff was never seen by an endocrinologist during the entire 16 months that Plaintiff was at SCCF.

38. Four months after filing the initial medical grievance and having still not received any proper medical attention for Plaintiff's gender dysphoria, Plaintiff filed a second medical grievance against SCCF on August 29, 2013. Again, Plaintiff requested treatment, including hormone therapy, for Plaintiff's gender dysphoria.

39. On August 30, 2013, SCCF medical staff, including Defendant physicians, responded to Plaintiff's second grievance form by representing yet again that they would arrange an endocrinologist consultation for Plaintiff. They never did so.

40. The Defendant physicians did not consider Plaintiff's condition to be a serious medical condition requiring timely medical attention. To the contrary, they consistently treated Plaintiff's condition as frivolous and were content to let the next correctional facility deal with Plaintiff's medical needs.

41. In an October 9, 2013 progress note, Dr. Geraci indicated what he thought of Plaintiff's condition. Dr. Geraci referred to Plaintiff's gender-reassignment hormone therapy as "non-essential" and repeatedly put quotation marks around the word "treatment." Dr. Geraci also wrote that "Endocrinologists in the local community" were unwilling to "address [Plaintiff's] transgender preference" – a comment that, apart from being difficult to believe,

10

further demonstrates Dr. Geraci's indifference to Plaintiff's condition.  Gender dysphoria is a serious medical condition, not a "preference."

42. Dr. Geraci was perfectly willing to ignore Plaintiff's medical condition and need for medical treatment, especially since he expected Plaintiff to transfer to another facility.  He wrote in his October 9th note that "this is not an emergency," adding, "the patient is being sent to the State prison system in early November."  These comments further evidence Dr. Geraci's indifference to Plaintiff's medical condition and preference that Plaintiff's medical care be someone else's problem.

**FIRST CLAIM FOR RELIEF**
**(42 U.S.C. § 1983, Eighth and Fourteenth Amendments to the United States Constitution)**

43. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 42 as if set forth fully herein.

44. Defendants' actions and failures to act were committed under the color of state law.

45. At all times, Defendant physicians Vincent Geraci, Dennis Russo, and Thomas Troiano were employees of Suffolk County and/or the Suffolk County Department of Health Services and/or the Suffolk County Medical Health Clinic and were charged with responsibility for Plaintiff's medical care.

46. Under the Eighth and Fourteenth Amendments to the United States Constitution, Plaintiff had a right to adequate medical care while incarcerated at SCCF.

47. Defendants deprived Plaintiff of this right and acted with deliberate indifference to Plaintiff's serious medical needs by denying Plaintiff treatment for gender dysphoria, including gender-reassignment hormone therapy.

11

67013255_5

48. Plaintiff's gender dysphoria is a serious medical condition requiring treatment. Cessation of Plaintiff's hormone therapy treatment posed an excessive and substantial risk to Plaintiff's health and well-being.

49. Plaintiff was in chronic emotional and mental distress as a result of Defendants' failure to treat Plaintiff's medical needs. Defendants remained consistently indifferent to and dismissive of Plaintiff's medical needs, which they considered "non-essential."

50. At all relevant times, the Defendant Physicians were aware of Plaintiff's medical condition and need for treatment.

51. Defendants' actions, omissions, and deliberate indifference were a proximate cause of Plaintiff's injuries and harm. While on hormone therapy prior to Plaintiff's incarceration at SCCF, Plaintiff began developing secondary female physical characteristics. That process was reversed because of Defendants' failure to provide Plaintiff with the necessary medical care for gender dysphoria. Plaintiff suffered severe and continuous emotional, mental, and physical distress as a result of Plaintiff's redevelopment of male characteristics due to the lack of hormone therapy.

52. Plaintiff has suffered and will continue to suffer emotional, mental, and physical distress by having to restart hormone therapy after the lengthy cessation of Plaintiff's treatment caused by the Defendants, including by re-experiencing the side effects of hormone therapy.

53. Plaintiff is entitled to damages from Defendants to compensate Plaintiff for the injury, pain, suffering, mental anguish, shock, and discomfort that Plaintiff suffered as a result of Defendants' acts, omissions, and deliberate indifference to Plaintiff's serious medical needs.

67013255_5

**SECOND CLAIM FOR RELIEF**
**(Policy or Custom Regarding the Treatment of Gender Dysphoria in Violation**
**of the Eighth and Fourteenth Amendments to the United States Constitution)**

54. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 53 as if set forth fully herein.

55. Defendants, collectively and individually, while acting under the color of state law, engaged in conduct pursuant to a custom, usage, practice, procedure, or rule of Suffolk County and SCCF to fail to provide transgender inmates with necessary medical treatment while incarcerated at SCCF.

56. In addition, Defendants failed to properly train medical staff at SCCF to provide medically and constitutionally necessary medical care to transgender inmates, including Plaintiff.

57. The aforementioned customs, policies, usages, practices, procedures, and rules of Suffolk County, and Defendants' failure to train medical staff, denied Plaintiff access to necessary medical treatment for Plaintiff's gender dysphoria and for the distress and symptoms Plaintiff suffered due to lack of treatment.

58. The foregoing customs, policies, usages, practices, procedures and rules of Suffolk County, and Defendants' failure to train medical staff, constituted deliberate indifference and compromised Plaintiff's safety, well-being, and physical and mental health.

59. The aforementioned customs, policies, usages, practices, procedures, and rules of Suffolk County, and Defendants' failure to train medical staff, were a direct and proximate cause of Plaintiff's injuries.

67013255_5

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a. Compensatory damages under 42 U.S.C. § 1983 in an amount to be determined at trial, but not less than $1,00,000;

b. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

c. Such other and further relief as the Court may deem appropriate.

Dated: New York, New York
December 4, 2015

HUGHES HUBBARD & REED LLP

By: /s/ Seth D. Rothman
Seth D. Rothman
David B. Shanies
Fara Tabatabai
One Battery Park Plaza
New York, New York 10004-1482
Telephone:  212-837-6000
Fax:  212-422-4726
seth.rothman@hugheshubbard.com
david.shanies@hugheshubbard.com
fara.tabatabai@hugheshubbard.com

*Attorneys for Plaintiff*