**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
JEREMY SUNDERLAND,

                              Plaintiff,

- against -

SUFFOLK COUNTY, NEW YORK; VINCENT F.
DeMARCO, in his official capacity; CHARLES
EWALD, in his official capacity; VINCENT T.
GERACI; DENNIS RUSSO; and THOMAS
TROIANO,

                          Defendants.
-----------------------------------------------------------X

**DECISION AND ORDER**

CV 13-4838 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

This Section 1983 action is brought by Plaintiff Jem Sunderland ("Plaintiff") against Suffolk County, Suffolk County Sheriff Vincent F. DeMarco, Charles Ewald, Warden of the Suffolk County Correctional Facility ("SCCCF"), Vincent T. Geraci, a physician with the Suffolk County Department of Health Services ("SCDOH") and the Medical Director at SCCF, Dennis Russo, a physician with the SCDOH assigned to SCCF, and Thomas Troiano, a psychiatrist with the SCDOH also assigned to the SCCF (collectively, "Defendants"). *See generally* Amended Complaint ("Am. Compl.") [DE 58] ¶¶ 9-13.  Plaintiff, a transgender individual with gender dysphoria, alleges that Defendants denied her hormone therapy and acted in a manner that was deliberately indifferent to her serious medical needs in violation of the Eight and Fourteenth Amendments.  *See generally* Am. Compl.

Presently before the Court is Plaintiff's Motion to Compel Defendants to produce unredacted versions of (1) two Notice of Claim forms filed against Suffolk County and (2) medical records of 11 SCCF inmates who sought treatment for gender dysphoria. *See generally* Plaintiff's Motion to Compel ("Pl's. Mot.") [DE 95]. Defendants oppose the motion on privacy grounds among other things. *See generally* Defendants' Opposition ("Defs.' Opp'n") [DE 96].

## II.   LEGAL STANDARD

### A.   Federal Rule 26

Rule 26(b)(1), as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley v. Choice Hotels Int'l*, No. CV 14-634, 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015) (recognizing that "the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant 'to any party's claim or defense,' also 'proportional to the needs of the case.'") (internal citation omitted); *Denim Habit, LLC v. NJC Boston, LLC*, No. 13 CV 6084, 2016 WL 2992124, at *3 (E.D.N.Y. May 23, 2016). Notably, although Rule 26 still permits a wide range of discovery based upon relevance and proportionality, the "provision authorizing the court . . . to order discovery of any matter relevant to the subject matter involved in the action" has been eliminated. Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley*, 2015 WL 9413101, at *2 (internal citation omitted). The rationale behind the elimination of this phrase is the finding that it "has been used by some, incorrectly, to define the scope of discovery." Rule 26 Advisory Committee Notes to 2015 Amendments. Thus, Rule 26(b)(1), as amended, although not fundamentally different in scope from the previous version "constitute[s] a reemphasis on the importance of proportionality in discovery but not a

substantive change in the law." *Vaigasi v. Solow Mgmt. Corp.*, No. 11 CIV 5088, 2016 WL 616386, at *13 (S.D.N.Y. Feb. 16, 2016); *see Robertson v. People Magazine*, No. 14 Civ. 6759, 2015 WL 9077111 at *2 (S.D.N.Y. Dec. 16, 2015) ("[T]he 2015 amendment [to Rule 26] does not create a new standard; rather it serves to exhort judges to exercise their preexisting control over discovery more exactingly.").

Notwithstanding the foregoing principles, however, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, No. 12 Civ. 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (quoting *Wells Fargo Bank, N.A. v. Konover,* No. 05 Civ. 1924, 2009 WL 585430, at *5 (D. Conn. Mar. 4, 2009)) (internal quotation marks omitted); *Evans v. Calise*, No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)); *Denim Habit, LLC*, 2016 WL 2992124, at *3. In general, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina,* 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir. 2008)), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 189 L. Ed. 2d 234 (2014); *Coggins v. Cnty. of Nassau*, No. 07 Civ. 3624, 2014 WL 495646, at *2 (E.D.N.Y. Feb. 6, 2014) (A district court has "broad discretion to determine whether an order should be entered protecting a party from disclosure of information claimed to be privileged or confidential.") (internal quotation omitted); *see Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) (citing *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999)) ("[m]otions to compel are left to the court's sound discretion."); *Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) (citing *Am. Sav. Bank, FSB v. UBS Paine Webber, Inc.*, 330 F.3d 104, 108 (2d Cir.2003); *United States v.*

3

*Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

### B. The Health Insurance Portability and Accountability Act ("HIPAA")

"HIPAA was enacted by Congress 'to ensure the confidentiality of protected health information maintained by covered entities.'" *Nat'l Ass'n of Letter Carriers, AFL–CIO v. U.S. Postal Serv.*, 604 F. Supp. 2d 665, 671 (S.D.N.Y.2009) (quoting *Gratton v. United Parcel Serv., Inc.*, No. CV 07–3071, 2008 WL 4934056, at *4 (E.D.N.Y. Nov. 14, 2008)). HIPAA's Privacy Regulations, 45 C.F.R. Parts 160 and 164, authorize use and disclosure of protected health information "without the written authorization of the individual ... or the opportunity for the individual to agree or object" only under specific circumstances. 45 C.F.R. § 164.512. In particular, 45 C.F.R. § 164.512(e)(1)(i), entitled "Disclosures for judicial and administrative proceedings," provides that "[a] covered entity may disclose protected health information in the course of any judicial or administrative proceeding: (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order ...." In other words, "'under HIPAA and the regulations promulgated thereunder, disclosure of patient records in legal proceedings is permitted if ordered by the court.'" *Patrick v. Bronx Care*, No. 14–CV–7392, 2014 WL 7476972, at *2 (E.D.N.Y. Dec.31, 2014) (quoting *Jacobs v. Conn. Cmty. Tech. Coll.*, 258 F.R.D. 192, 197 (D. Conn. 2009)) (citing 45 C.F.R. § 164.512(e)(1)) (alterations omitted).

With these principles in mind, the Court now turns to an analysis of the parties' arguments concerning the disputed documents.

**III.     DISCUSSION**

    **A.     Plaintiff's Need for Discovery**

In the Amended Complaint, Plaintiff alleges a municipal liability claim against the Defendants for "engag[ing] in conduct pursuant to a custom, usage, practice, procedure, or rule of Suffolk County and SCCF to fail to provide transgender inmates with necessary medical treatment while incarcerated at SCCF."  Am. Compl. ¶ 55.  Plaintiff also asserts supervisory liability claims against the Suffolk County Sheriff and Warden of the SCCF as well as claims against individual defendant physicians and psychiatrists who "were charged with responsibility for Plaintiff's medical care."  *See* Am. Compl. ¶ 45.

In connection with these claims, Plaintiff seeks unredacted versions of (1) two Notice of Claim forms filed against Suffolk County concerning the treatment of transgender inmates or inmates with gender dysphoria and (2) the medical records of 11 SCCF inmates who sought treatment for gender dysphoria.  *See generally* Pl's. Mot.  A review of the documents at issue shows that Defendants have redacted  (1) each inmate's identifying information, which includes the inmate's name, social security number, date of birth, and ID number, and (2) the names and contact information of the physicians who treated the inmates prior to their incarceration. Plaintiff argues that disclosure of the 11 inmates' identifying information is relevant to her claim for municipal liability since that data may reveal inmates who were also denied hormone therapy who can serve as direct witnesses of the Defendants' "custom" or "practice" of failing to provide transgender inmates with necessary medical care.  Pl's. Mot. at 3.  According to Plaintiff, these inmates may also attest to the "bias or animus" of the individual Defendants which is relevant to Plaintiff's deliberate indifference claim.  *Id*.  Lastly, Plaintiff seeks the inmates' identities so that she may contact them in an effort to gather any relevant information they can provide.  *Id*.

5

### i. Municipal Liability

To state a claim for municipal liability, a plaintiff must show (1) a violation of his constitutional rights, and (2) that the violation was caused by a municipal policy or custom. *See Sheikh v. City of New York*, 03-6326, 2008 WL 5146645, at *11 (E.D.N.Y. Dec. 5, 2008) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)); *see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 400, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). To establish a "municipal policy or custom," a plaintiff must establish one of the following elements: (1) "a formal policy, promulgated or adopted by" Defendants, *Sheikh*, 2008 WL 5146645, at * 11 (citing *Monell*, 436 U.S. at 690); (2) "that an official with policy making authority took action or made a specific decision which caused the alleged violation of constitutional rights," *id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); or (3) "the existence of an unlawful practice by subordinate officials was so permanent or well settled so as to constitute a 'custom or usage' and that the practice was so widespread as to imply the constructive acquiescence of policy-making officials." *Id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)).

### ii. Deliberate Indifference

Establishing a claim for deliberate indifference to medical needs in violation of the Eight and Fourteenth Amendments involves a two-pronged analysis. *Grimmett v. Corizon Med. Assocs. of New York*, 15-7351, 2017 WL 2274485, at *3 (S.D.N.Y. May 24, 2017). First, "the alleged deprivation of adequate medical care must be 'sufficiently serious.'" *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 844, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)); *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d

6

127, 138 (2d Cir. 2013) (quoting *Salahuddin*, 467 F.3d at 279).  Second, the plaintiff must show that the defendant acted with a "sufficiently culpable state of mind." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)); *see Salahuddin*, 467 F.3d at 279-81.  In the context of the Eight Amendment, an official acts with the requisite state of mind when he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  In connection with a claim arising under the Fourteenth Amendment, the second prong is satisfied by a showing that the official knew or should have known that their conduct posed an "excessive risk to health and safety." *Lloyd v. City of New York*, No. 14-9968, 2017 WL 1207838, at *9 (S.D.N.Y. Mar. 31, 2017) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)).

The Court is satisfied that calling upon other transgender inmates who also sought but were denied hormone therapy would support an inference of a policy or custom to deny medical care to those inmates.  This information would also support Plaintiff's claim for deliberate indifference to medical needs, particularly the *mens rea* component of the analysis.  The Court must now weigh Plaintiff's need for the identities of these inmates against the confidentiality and privacy concerns implicated by the disclosure of such information.

      **B.**    **Confidentiality and Privacy Concerns**

           **i.**   *Notice of Claim*

Defendants argue that the two Notice of Claim forms at issue were filed with the County by inmates who claimed that they were denied hormone therapy while at the Suffolk County Jail Medical Unit.  Defs.' Opp'n. at 1.  The notices therefore contain "protected health information,"

7

and on these grounds, Defendants maintain they cannot reveal the identities of the individuals who filed them. *Id*. Defendants further argue that Notices of Claim are not public documents. The court in *Bejaoui v. City of New York*, 13-5667, 2015 WL 1529633, at *4-*6 (E.D.N.Y. March 31, 2015) grappled with this issue but in the context of the defendant's motion to dismiss the plaintiff's Section 1983 action on substantive and procedural grounds. Plaintiff in *Bejaoui* alleged violations of the his constitutional rights arising from several arrests and prosecution in New York State court. *Id*. at *1. The City of New York filed a motion to dismiss the plaintiff's action as against it and certain unknown officers on procedural and substantive grounds. *Id*. at *1. Among other things, the defendants pointed out certain documents which they asked the court to consider even though plaintiff's complaint contained no reference to those documents. Included in the group was a notice of claim, which gave rise to a dispute over whether such document constituted a public record. *Id*. at *6. In making its determination, the court in *Bejaoui* explained that "[t]here is [ ] disagreement among district courts in the Second Circuit as to whether these types of documents, including notice-of-claim documents, constitute public records of which courts may take judicial notice." *Id*. at *6 (citing *Alvarez v. County of Orange, New York*, No. 13-7301, 2015 WL 1332347, at *10 (S.D.N.Y. 2015) (collecting cases); *Peterec v. Hilliard*, No. 12–CV–3944, 2013 WL 5178328, at *3 (S.D.N.Y. Sept.16, 2013)).

The court in *Bejaoui* concluded that where many district courts disagree on an issue and the Second Circuit has not yet rendered a determination, the court "hesitates" to make a finding that these documents are public documents of which judicial notice may be taken. *Id*. (citing *Alvarez*, 2015 WL 1332347, at *11). Since there is a question as to whether Notice of Claim documents are public documents, as the court in *Bejaoui* observed, this Court is persuaded to

8

adopt the approach that is more protective of the non-parties' privacy interests, especially since the information at issue involves highly sensitive medical information.

Moreover, the production of redacted notice of claim forms filed by non-parties is not an unprecedented measure. For example, in *B.H. ex rel. D.B. v. City of New York*, No. 10 CV 210, 2011 WL 2133810, at *2 (E.D.N.Y. May 27, 2011), a putative class action in which the plaintiffs alleged "systematic shortcomings in the New York Police Department's School Safety Division," the court noted that the plaintiffs' initial disclosures, Complaint, and motion for class certification included references to, among other documents, redacted notices of claim and complaints filed against the defendant by non-parties. The court in *B.H. ex rel B.D.* explained that although the defendants "are entitled to some information about the non-parties…the City has not demonstrated entitlement to any potentially sensitive documents as to most of these individuals." *Id*. The court further observed, there was no proof in the record that these non-parties have consented or intend to consent to participation in the litigation. *Id*. "In light of the privacy concerns thereby implicated," the court denied the City's request for an unsealing order of private records or for a call from the court to determine whether these individuals were interested in participating in the litigation. *Id*. The court's findings in *B.H. ex rel. D.B.* are relevant because they demonstrate an unwillingness to facilitate solicitation of non-parties' for participation in litigation.

Plaintiff argues, nonetheless, that Defendants' refusal to disclose the identifying information of the individuals who filed the Notices of Claim on the grounds that such information is private is improper. Pl's. Mot. at 2. As support, Plaintiff cites two district court cases in this Circuit, *Benefitvision Inc. v. Gentiva Health Servs., Inc*., 09-473, 2011 WL 3796324 (E.D.N.Y. May 23, 2011) and *Sperling v. Harman Int'l Indus., Inc.*, 10-2415, 2011 WL 4344165

9

(E.D.N.Y. Sept. 14, 2011). A review of these cases, however, reveals that they do not involve the type of sensitive medical information at stake in the instant case, an important factual distinction. *See Benefitvision, Inc.*, 2011 WL 3796324, at * 1 (addressing plaintiff's motion to compel defendants to produce email communications withheld on the grounds that they contained "proprietary" or "confidential" information); *see also Sperling*, 2011 WL 4344165, at *1-2 (regarding plaintiff's motion to compel the production of younger employees' personnel files for the purpose of ascertaining whether those employees were less qualified than the plaintiff). It is worth noting that in the *Sperling* case, although it was possible that a personnel file might contain records which reveal certain aspects of an employee's medical history, the court gave no indication that such records were at issue in that case. Moreover, neither *Benefitvision* nor *Sperling* addresses the particulars of a Notice of Claim and whether such documents should be treated as public records.

     Not only is the authority for Plaintiff's requested relief lacking, but it appears that Plaintiff's motion with respect to one of the two individuals is moot. Defendants explain that they produced one Notice of Claim form without redacting the contact information of the filer's attorney, thereby providing Plaintiff's counsel with the opportunity to contact that attorney to discuss disclosure of his client's identity. Defendants were subsequently put on notice that Plaintiff's counsel took over representation of that particular filer. It follows that Plaintiff's counsel has access to the unredacted version of his newly acquired client's Notice of Claim form. Moreover, the Second Notice of Claim was rejected by the County for failure to comply with General Municipal Law and the individual has not followed up with the County since.

10

Taking the foregoing factors into account, the Court will not compel the production of unredacted versions of the Notice of Claim forms on the grounds that they are not public records and they contain sensitive health information of individuals who are not parties to this action.

### ii.     Medical Records

At the outset, Defendants explain that the Suffolk County Jail Medical Unit ("SCJMU") is a "covered entity" and, as such, is legally required to abide by HIPAA.  HIPAA prohibits the disclosure of "private health records containing information that can identify the individual to whom the records pertain, such as name, date of birth, and address."  Defs.' Opp'n. at 2.  Defendants concede, however, that there are circumstance under which a covered entity may disclose protected health information "'without the written authorization of the individual … or the opportunity for the individual to agree or object.'"  *Id.* (citing *In re Zyprexa Prod. Liab. Litig.*, 254 F.R.D. 50, 53–54 (E.D.N.Y. 2008), *aff'd*, No. 04-MD-1596, 2008 WL 4682311 (E.D.N.Y. Oct. 21, 2008) (citations omitted)), and that "[a] court order may satisfy such circumstance."  *Id*.  Cognizant of this fact, Defendants produced the instant medical records in redacted form consistent with the Stipulation and Protective Order Regarding HIPAA Qualified Discovery Materials[1] which was previously so-ordered by this Court.  According to Defendants, this method of production is consistent with current case law on the issue.  A review of the cases cited by Defendants, as well as a review of additional authority which this Court was able to locate independently, reveals that such methodology is generally the case.

For example, in *Marom v. The City of New York*, 15-2017, 2016 WL 7048053, at *1 (Nov. 30, 2016), the plaintiff sought the production of Online Booking System Reports

---

[1]     The Order states, in relevant part, that "HIPAA Qualified Discovery Materials may be disclosed, provided that, prior to disclosure the Party disclosing the HIPAA Qualified Discovery Materials redacts any Protected Health Information contained therein that is not relevant to the claims and defenses in the Litigation."  *See* DE 73.

11

("OLBS"), Online Prisoner Arraignment System Reports ("OLPA"), and a Mass Arrest Report related to 12 third-party arrestees who had been processed by the defendants in connection with the Occupy Wall Street protests. The plaintiffs alleged that the defendant officers were responsible for the generation of OLBS reports that falsely indicated officers had personally observed the arrestees' unlawful conduct when the officers actually had not. *Id*. The court explained that the OLPA and OLBS reports would be highly relevant to the plaintiffs' claims in view of the fact that "identically worded allegations for non-party arrestees may suggest to the finder of fact that the defendants did not personally observe plaintiffs' conduct as required by NYPD protocol and/or instructed other officers to fill out such report without having personally observed similarly-situated non-party arrestees' conduct." *Id*. at *2. In connection with the mass arrest report, the court expressed that "there appear[ed] to be no privilege or other ground to withhold this relevant information assuming that ***all personally identifiable information [ ] is redacted***." *Id*. (emphasis added). Moreover, the court noted, the redaction of such information from the OLBS and OLPA reports "is plainly sufficient to protect non-parties' interest in avoiding public stigma due to their arrest and/or prosecution." *Id*. Although the plaintiffs in *Marom* consented to the redaction of identifying information, the court still considered the implications of disclosure of identifying information on the privacy interests of the non-party arrestees, which the court is required to do in the instant case as well.

Likewise, in *Cyris Jewels v. Mark Casner*, 12-1895, 2016 WL 2962203, at *1 (E.D.N.Y. May 20, 2016), the District Judge affirmed the Magistrate Judge's order directing the defendants to redact identifying information in the foster care records of non-party children. *Cyris Jewels* involved a Section 1983 action in which the plaintiff alleged that "defendants failed to protect him from abuse while he was in the custody of New York City's foster care system." *Id*. The

12

defendant city expressed concern over the disclosure of confidentially sensitive information about non-parties. *Id*. at *2. The court directed the defendant to redact the children's names, birthdates, social security numbers, telephone numbers, addresses, as well as "very explicit physical description[s]" of any child. *Id*. at *2. This Court finds other cases to be similarly telling. *See United States v. Erie Cty., N.Y.*, 763 F.3d 235, 244 (2d Cir. 2014) (noting that upon the unsealing of compliance reports regarding medical issues, "redacting medical information identifiable to particular prisoners would be especially appropriate"); *Johnson by Johnson v. Thompson*, 971 F.2d 1487 (10th Cir. Aug. 6, 1992) (denying the plaintiff's request for the production of the identities of other study participants "to show the existence of a concerted plan to use socioeconomic criteria in making recommendations for appropriate treatment").

      The Court acknowledges that the decisions of the court in *Marom* and *Cyris Jewels* include discussions of state statutory privileges that are not applicable to the instant case. Such consideration of state law, however, does not persuade the Court to ignore the guidance provided by these cases. It is "federal law—not state law—[that] governs issues of privilege or confidentiality when the underlying claims arise under a federal statute like 42 U.S.C. § 1983." *Cyris Jewels*, 2016 WL 2962203, at *6 (citing Fed. R. Evid. 501; *United States v. Goldberger & Dubin, P.C*., 935 F.2d 501, 505 (2d Cir. 1991) (The "federal common law of privilege" applies to actions involving violations of federal law.); *Barella v. Vill. of Freeport*, 296 F.R.D. 102, 107 (E.D.N.Y. 2013) ("New York State law does not govern discoverability and confidentiality in federal civil rights actions.")). Federal courts must not completely ignore state privacy rules, however. *Id*. (citing *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988); *Unger v. Cohen*, 125 F.R.D. 67, 69 (S.D.N.Y. 1989)). That being said, such state rules were not the sole impetus for requiring the redaction of identifying information in these cases, *see Marom*, 2016 WL 7048053

13

(citing *Haus v. City of New York*, No. 03-4915, 2006 WL 1148680, at *1 (S.D.N.Y. Apr. 24, 2006)) ("[E]ven if Plaintiffs' request implicated non-parties' privacy interests protected under CPL § 160.50, the Court could still compel production of this information provided it met the proportionality and relevance requirements of Federal Rule of Civil Procedure 26(b)(1)"), or were discussed in general terms of privacy, an interest at stake in the instant case as well. *Cyris*, 2016 WL 2962203, at *7 ("[T]he magistrate judge explained that one of the issues that 'permeate[s] the various objections here ... is this idea that many of the documents that are requested have information about other foster care children and that providing those documents would violate the confidentiality concerns of those children.'") (internal quotation marks omitted.)

  The case law cited by Defendants is an accurate depiction of the current decision-making among courts. For example, *McEvoy v. Hillsborough County*, 09-431, 2011 WL 1813014 (D.N.H. May 5, 2011) is a Section 1983 action in which the plaintiff sought very similar relief and on virtually the same grounds as Plaintiff does here. The administrators of Kevin McEvoy's estate asserted municipal liability and supervisory liability claims for the defendants' failure to provide the deceased with adequate medical care. *Id*. at *1. McEvoy was a heroin user at the time he entered the Hillsborough County House of Corrections. *Id*. After he was admitted, he experienced "heroine detoxification and withdrawal, which caused him to dehydrate." *Id*. He was unable to retain foods or fluids and suffered from protracted vomiting. *Id*. McEvoy was seen by jail nurses who gave him Tylenol, Kaopectate and Maalox, but he was never seen by a physician. *Id*. He died in his cell from "cardiovascular collapse due to severe dehydration with acute renal failure due to protracted vomiting and inadequate volume replacement." *Id*. To support their claims for municipal and supervisory liability, the plaintiffs in *McEvoy* sought "the

14

identity of and records relating to any and all inmates who underwent detoxification at the jail during the year prior to [McEvoy's] death." *Id*. at *2. The court determined that the plaintiffs demonstrated a need for this information in light of the nature of their claims and therefore directed the defendants to produce the requested records. *Id*. at *4-*5. However, in light of privacy and confidentiality concerns, production was subject to redactions to remove the non-party inmates' identifying information. *Id*. The court went on to explain that if, after reviewing the redacted records, the plaintiffs seek disclosure of the identifying information, they "will have to demonstrate, with particularity, as to each inmate individually about whom identifying information is sought, that plaintiffs *need* information that is not contained within the redacted record and that could reasonably be expected to be obtained by identifying the individual associated with the record." *Id*. at 9 (citing *United States v. Polan*, 970 F.2d 1280, 1285 (3d Cir. 1992)) (emphasis in original). Significantly, the court further noted that "[i]t will be insufficient for plaintiffs to assert a general desire to interview any former inmate who was treated for drug detoxification or withdrawal, and/or dehydration at the HCHC." *Id*.

      Here, Plaintiff sets forth virtually the same justification for the production of non-party medical records which led the court in *McEvoy* to order their production, albeit in redacted form. In this regard, the *McEvoy* plaintiffs and the Plaintiff here have both argued that such information would support their claims for municipal liability and deliberate indifference to medical needs. However, this justification did not suffice to convince the court in *McEvoy* that the disclosure of the non-party inmates' identifying information was warranted. Moreover, the court in *McEvoy* rejected the notion that such information is necessary because it would allow

15

the plaintiff to communicate with the non-parties.  Plaintiff here sets forth the very same justification for her motion to compel.[2]

By way of further example, in *Marcum v. Scioto County*, 10-790, 2012 WL 2018523, at *6 (S.D. Ohio June 5, 2012), a Section 1983 action, the court directed the defendants to redact the identifying information of non-party inmates from their medical records.  *Marcum* also involved claims of municipal liability and deliberate indifference to medical needs.  *Id.* at *2.

In light of the reasoning exercised by the courts in the foregoing cases, this Court is not persuaded by Plaintiff's representation that disclosure of the identifying information is warranted.[3]  It is evident that ordering the production of redacted medical records is a measure which courts commonly utilize to balance a party's need to gather evidence in support of his/her claim with the privacy interests of non-parties.  The Court finds such reasoning to be a prudent approach and adopts the same here.  The Court will not require Defendants to disclose the identifying information of the non-party inmates in this case.

### IV.  CONCLUSION

Based upon the foregoing analysis, Plaintiff's motion is DENIED.

**SO ORDERED.**

Dated: Central Islip, New York
       September 29, 2017

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

---

[2]  The court in *McEvoy* also references state statutory privilege.  However, as in *Marom* and *Cyris Jewels*, such law was not the sole deciding factor in the court's decision.

[3]  The Court notes that Plaintiff cites this Court's opinion in *Cooks v. Town of Southampton*, 13-3460, 2015 WL 1476672 (E.D.N.Y. March 31, 2015), in support of her position.  *Cooks*, however, in relevant part involved a motion to compel the production of documents regarding internal investigations into the alleged drug dependency of a police officer, a named Defendant in the action, whereas Plaintiff's motion here seeks production of highly sensitive, identifying information of non-parties.  *See* Pl's. Mot. at 3.